**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTRI-PLEX TECHNOLOGIES, INC.,
            *Plaintiff-Appellant,*

v.

THE CREST GROUP, INCORPORATED, a
Delaware corporation, e/s/a Crest
Ultrasonics Corporation, d/b/a
Crest Ultrasonics Corporation,
            *Defendant-Appellee.*

No. 05-55923

D.C. No.
CV-05-00716-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
April 10, 2007—Pasadena, California

Filed August 27, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

10607

**COUNSEL**

John A. Belcher, Law Offices of John Belcher, Pasadena, California, for the plaintiff-appellant.

Marcus J. Kocmur (argued), Douglas B. Large, Archbald & Spray LLP, Santa Barbara, California, for the defendant-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Intri-Plex Technologies, Inc. (Intri-Plex) appeals from the district court's order granting the defendant Crest Ultrasonics Corp.'s (Crest)[1] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Appellant Intri-Plex manufactures computer disk drive components called "baseplates."[2] Compl. ¶ 1. Intri-Plex sells finished baseplates to manufacturers of component parts for computer disk drive assemblies. Appellee Crest manufactures and sells ultrasonic cleaning equipment, including hot air

---

[1]Sued as "The Crest Group, Inc. dba Crest Ultrasonics Corp."

[2]Because this is an appeal from the dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(6), we accept as true the facts alleged in Intri-Plex's complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir. 2001).

dryer consoles, which are used by manufacturers in the computer disk drive industry. Intri-Plex purchased hot air dryer consoles with HEPA air filters and replacement filters from Crest and installed one of these consoles in its Goleta, California, facility. Crest warranted to Intri-Plex that the equipment supplied to it would be defect-free.

In May 2002, Intri-Plex's customers contacted Atlantic Mutual Insurance Co. (AMI), Intri-Plex's insurance company, regarding corrosion problems with the finished baseplates they received from Intri-Plex in April and May 2002. The corrosion was caused by defective air filters supplied to Intri-Plex by Crest. KR Precision Public Company Ltd. (KRP) is an Intri-Plex customer. KRP welded Intri-Plex's corroded finished baseplates into its suspension assemblies, and once attached, it was not possible to repair or replace the corroded baseplates without damaging the KRP product. This resulted in the recall of finished baseplates manufactured, distributed, and shipped by Intri-Plex as well as compensation to KRP for the damaged suspension assemblies.[3]

In June 2003, AMI commenced a subrogation action against Crest by filing a complaint in California superior court. In its complaint, AMI alleged, "The terms of the INTRI-PLEX insurance policy assign to plaintiff [AMI], to the extent of its payment, all rights, claims or causes of action of its insured against any parties legally or equitably responsible for these losses. Under California law, plaintiff is subrogated to the rights of its insured [Intri-Plex] against the

---

[3]Intri-Plex alleged, "Corroded finished baseplates contaminated by chlorine being welded into suspension assemblies manufactured by KRP resulted in the compensation of KRP for losses sustained for damaged product." Compl. ¶ 13. Intri-Plex next alleged that it "received partial indemnity from [AMI] for the identification, recall, and return of finished baseplates . . . and for suspension assemblies manufactured by KRP . . . incorporating finished baseplates manufactured by [Intri-Plex]." Compl. ¶ 14.

defendants named in this action." AMI Compl. ¶ 14.[4] AMI also alleged that it compensated its insured, Intri-Plex, for losses caused by Crest's defective product:

> Under the terms of its insurance policy, plaintiff compensated its insured [Intri-Plex] for economic losses and other damages caused by the defendant's defective . . . Hot Air Dryer and replacement . . . HEPA Filters. Under the terms of its insurance policy, plaintiff paid for the identification, recall, and return of finished baseplates manufactured, distributed and shipped by INTRI-PLEX from its Goleta, Santa Barbara, facility . . . and for suspension assemblies manufactured by KRP . . . incorporating finished baseplates manufactured by INTRI-PLEX.

*Id.* ¶ 14. AMI asserted eight causes of action: breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, breach of oral and written contract, general negligence, negligence-failure to warn, negligence-concealment of material fact, strict liability in tort, and equitable indemnity.

In February 2004, Intri-Plex negotiated and filed a stipulation for a protective order relating to use of its proprietary documents and test results in the litigation between AMI and Crest. After AMI reached a settlement with Crest, California superior court dismissed AMI's action with prejudice on December 1, 2004.

On January 28, 2005, Intri-Plex filed a complaint against Crest in the United States District Court for the Central District of California. Intri-Plex asserted the same factual allegations and causes of action against Crest as AMI asserted against Crest in its state court action. For example, Intri-Plex

---

[4]Intri-Plex's complaint is referred to as "Compl." and AMI's complaint is referred to as "AMI Compl."

alleged that it "received partial indemnity from [AMI] for the identification, recall, and return of finished baseplates manufactured, distributed and shipped by [Intri-Plex] from its Goleta . . . facility . . . and for suspension assemblies manufactured by KRP . . . incorporating finished baseplates manufactured by [Intri-Plex]." Compl. ¶ 14. Intri-Plex also alleged that it sustained some losses for which it was not insured, "including unsaleable inventory, deductibles and other losses, not covered by the [AMI] policy." *Id.*

Crest filed a motion to dismiss for failure to state a claim upon which relief could be granted, on the basis that Intri-Plex's action "improperly attempts to split a cause of action in pursuit of a claim that has previously been litigated and dismissed with prejudice and is, therefore, barred by the doctrine of res judicata." Def.s' Mot. to Dismiss at 1-2. Crest concurrently filed a request for judicial notice of (1) AMI's state court complaint, (2) Intri-Plex's stipulation regarding the protective order in state court, and (3) AMI's request for dismissal of its state court complaint with prejudice. Intri-Plex opposed the motion to dismiss.

The district court took Crest's motion to dismiss under submission without a hearing. On June 1, 2005, the district court granted Crest's motion to dismiss on the ground that Intri-Plex's complaint was an impermissible splitting of a single cause of action and therefore barred by res judicata. The district court also held that Crest did not waive the splitting defense because:

> nothing before the Court indicates that any party, besides Intri-Plex itself, had knowledge of the additional claims that Intri-Plex seeks to raise. The complaint is devoid of any mention of the *AMI* action and is similarly devoid of any allegation that Crest settled the claim with AMI with knowledge of Intri-Plex's remaining claims against it.

Order Granting Def.'s Mot. to Dismiss at 4.

## DISCUSSION

**Standard of Review**

We review de novo the district court's dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). All well-pleaded facts in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. *See id.* at 595. Res judicata claims are reviewed de novo. *Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1025 (9th Cir. 2005) (citation omitted).

Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion.[5] *Lee*, 250 F.3d at 688. However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." *Lee*, 250 F.3d at 689 (citation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

Since this is a diversity action the law of the forum state, California, applies. *See, e.g., Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003).

---

[5]Fed. R. Civ. P. 12(b) provides, "If, on a motion asserting the . . . defense to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

**I.  The district court properly dismissed Intri-Plex's suit as an impermissible attempt to split a cause of action barred by res judicata.**

A.  *Splitting the cause of action*

**[1]** To determine the preclusive effect of a state court judgment, federal courts look to state law. *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993). Res judicata "precludes parties or their privies from relitigating a *cause of action* that has been finally determined by a court of competent jurisdiction." *Rice v. Crow*, 81 Cal. App. 4th 725, 734 (2000) (internal quotation marks omitted). Since an insured—here, Intri-Plex—and its subrogated insurer—AMI—are privies, *see Ferraro v. S. Cal. Gas Co.*, 102 Cal. App. 3d 33, 42 (1980), the privity requirement is met here. AMI's dismissal of its California superior court complaint with prejudice is a final judgment on the merits. *Rice*, 81 Cal. App. 4th at 733-34. The only disputed issue is whether Intri-Plex's action against Crest is the same cause of action—seeking to vindicate the same "primary right"—as AMI's action against Crest in state court.

The district court properly dismissed Intri-Plex's suit as an impermissible attempt to split a single cause of action. Intri-Plex partially subrogated its rights to AMI. Intri-Plex disputes this and claims that AMI "was acting *as a partial subrogee of KR Precision, which was the only entity which received Atlantic Mutual funds*." Pl.'s Br. at 6 (emphasis in original). Not only is this a misunderstanding of subrogation,[6] but it contradicts Intri-Plex's own complaint, which alleged that

---

[6]"Under the doctrine of subrogation, when an insurer pays money to its insured for a loss caused by a third party, the insurer succeeds to its insured's rights against the third party in the amount the insurer paid. Upon subrogation, the insurer steps into the shoes of its insured." *Hodge v. Kirkpatrick Dev., Inc.*, 130 Cal. App. 4th 540, 548 (2005) (internal citations omitted).

AMI was its insurance carrier and that "Plaintiff received partial indemnity from [AMI] for the identification, recall, and return of finished baseplates manufactured, distributed and shipped by Plaintiff . . . and for suspension assemblies manufactured by KRP . . . incorporating finished baseplates manufactured by Plaintiff." Compl. ¶ 14.

Thus, it is clear that (1) Intri-Plex had an insurance policy with AMI and (2) pursuant to the insurance policy, AMI paid for loss that Intri-Plex sustained as a result of Crest's defective air dryers and filters, and loss that KRP sustained as a result of receiving defective baseplates from Intri-Plex. We are persuaded by Crest's argument that:

> when an insurer settles a claim brought against its insured, it becomes subrogated *to the rights that its insured* may have against third parties. It does *not* become subrogated to the rights of the insured's third party claimant. This is no less true when the "benefit" that the insured receives from its insurer is a payment directly to a third party to avoid the third party's claim. Atlantic Mutual settled KRP's claim *on behalf of Intri-Plex*, because it was Intri-Plex's insurer. It then became subrogated to *Intri-Plex's* rights against Crest.

Def.'s Br. at 17. Both *Allstate Ins. Co. v. Mel Rapton, Inc.*, 77 Cal. App. 4th 901 (2000), and *Ferraro*, 102 Cal. App. 3d 33, are directly on point.

In *Allstate*, the tortfeasor, Mel Rapton, Inc., caused damage to Katie Gallagher's car when it negligently repaired her cigarette lighter and the lighter caused a fire. 77 Cal. App. 4th at 905. Gallagher tendered a claim to Allstate Insurance Co. (Allstate). *Id.* Allstate paid Gallagher pursuant to her insurance policy, and Gallagher subrogated to Allstate her claim against Mel Rapton, Inc. *Id.* Allstate demanded that Mel Rapton's insurance company, Farmers Insurance Group (Farm-

ers), reimburse Allstate for the sum it paid to Gallagher, but Farmers denied responsibility for the loss. *Id.* Gallagher sought reimbursement from Mel Rapton for losses not covered by her insurance policy, such as pain and suffering and personal items inside the car that were destroyed by the fire. She filed a claim in small claims court and judgment was entered in her favor. *Id.*

Over one year later, Allstate filed a complaint in municipal court against Mel Rapton, alleging that it had negligently serviced the car, thereby causing the fire. *Id.* at 905-06. Allstate sought the sum it paid Gallagher minus the salvage value of the car. *Id.* at 906. Mel Rapton moved for summary judgment on the ground that Allstate's action was barred by res judicata and the rule against splitting causes of action. *Id.*

The California Court of Appeal, Third District, held that Allstate's action was barred because its claim was derived solely from the subrogation of Gallagher's rights against Mel Rapton. *Id.* at 909. It also held that Mel Rapton did not waive the defense of impermissible splitting, even though it was aware of Allstate's claim. *Id.* at 910. The court explained:

> When, as often happens, the insured is only partially compensated by the insurer for a loss . . . , operation of the subrogation doctrine "results in two or more parties having a right of action for recovery of damages based upon the same underlying cause of action." The insured retains the right to sue the responsible party for any loss not fully compensated by insurance, and the insurer has the right to sue the responsible party for the insurer's loss in paying on the insurance policy. . . . *Although the insurer may bring a separate action against the tortfeasor, the rule against splitting a cause of action is violated where both the insurer and the insured pursue separate actions.*

*Id.* at 908 (internal citation omitted) (emphasis added).

In *Ferraro*, plaintiffs whose property was damaged by a gas company settled their claims with their insurance company, Safeco. 102 Cal. App. 3d at 37. As part of their settlement, the plaintiffs subrogated their claims "to the amount of such payment" to Safeco. *Id.* at 38. Safeco filed a complaint against the gas company. Several months later, the plaintiffs also filed a complaint against the gas company. *Id.* They alleged in their complaint that they had received insurance benefits from Safeco, but they did not attempt to join Safeco, and Safeco did not intervene. *Id.* The gas company did not raise the issue of impermissible claim-splitting until the trial was over and the plaintiffs appealed. *Id.* at 40.

The California Court of Appeal, Second District, held that the appellants impermissibly split the claim:

> the subrogation clause resulted in a partial subrogation to Safeco, that is, subrogation in the amount of the insurance proceeds only. Therefore, appellants could still maintain a cause of action against the tortfeasors for those losses beyond such insurance proceeds. *Nonetheless, failure of appellants to join Safeco or of Safeco to intervene did result in a splitting of the cause of action . . . .*"

*Id.* at 43 (emphasis added). However, since the gas company did not raise this objection in the trial court, it waived the defense. *Id.* at 43-44.

**[2]** Here, AMI paid the claims of KRP against Intri-Plex for the defective baseplates and the suspension assemblies pursuant to Intri-Plex's insurance policy. Because Intri-Plex partially subrogated its rights to AMI, AMI filed an action against Crest, the tortfeasor, to recover the benefit AMI paid

to its insured. Thus, AMI acted as a partial subrogee of Intri-Plex.[7]

[3] As *Ferraro* and *Allstate* make clear, although Intri-Plex was only partially compensated for its loss because its insurance policy with AMI did not cover all of its losses, Intri-Plex should have pursued its claims in a single action along with AMI. The fact that Intri-Plex was aware of AMI's complaint in state court against Crest is not subject to reasonable dispute, because it filed a stipulation regarding a protective order in California superior court on February 22, 2004. Intri-Plex did not intervene in that action. Intri-Plex argues instead that Crest could have joined Intri-Plex in that litigation, but it was Intri-Plex's duty to intervene to protect its own rights.[8] As the district court put it, "nothing before the Court indicates that any party, besides Intri-Plex itself, had knowledge of the additional claims that Intri-Plex seeks to raise." Order at 3.[9]

---

[7]As the district court correctly noted, Intri-Plex confuses equitable indemnity with equitable subrogation. "According to California law, equitable indemnity permits 'a concurrent tortfeasor to obtain partial indemnity from another concurrent tortfeasor on a comparative fault basis.' " *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (citing *Am. Motorcycle Ass'n v. Superior Court of Los Angeles County*, 20 Cal.3d 578, 598 (1978)). This is not a situation involving concurrent tortfeasors, with one seeking to recover on a comparative fault basis from the other.

[8]Intri-Plex had the right to intervene under Cal. Civ. Proc. Code § 387(b), which provides, "if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene." *Cf. Hodge*, 130 Cal. App. 4th at 550-52 (holding that intervention was the best way for the insurance company to protect its subrogation rights).

[9]As discussed above, even if Intri-Plex amended the complaint to allege these facts, its action would still be barred by the rule against splitting claims.

**[4]** Intri-Plex argues that its claim for injury to reputation and damage to inventory were not covered by AMI, and that these constitute separate "primary rights." Intri-Plex, however, did not allege injury to reputation; it has only alleged damage to property not covered by insurance, such as damage to inventory. The right to recover for damage to property arises from one primary right—the right not to have your property damaged by another. Here, the district court correctly held that "the *AMI* action and this action grow from the violation of a single primary right stemming from a single harm suffered: corrosion of the baseplate allegedly caused by Crest's faulty products." Order at 2.

### B.   Waiver

**[5]** Under the principles articulated in *Allstate* and *Ferraro*, Crest did not waive the splitting defense. Crest raised the issue in its motion to dismiss, and Intri-Plex's action was not filed until after AMI's. In *Allstate*, the court held there was no waiver because "[u]ntil Allstate filed its action, there was no impermissible splitting; Gallagher simply had sued Mel Rapton for less than the full amount of her damages." 77 Cal. App. 4th at 910. The same principle applies here.

*Allstate* holds that a tortfeasor with knowledge of an insurer's subrogation claim may not settle the entire cause of action by settling only with the insured and thereby foreclose a subsequent action by the insurer. *Id.* at 912. Intri-Plex argues that this permits it to bring a subsequent action where Crest settled with AMI knowing that Intri-Plex had claims. This is not so because even if Intri-Plex amended its complaint to allege that Crest settled with AMI with knowledge of Intri-Plex's remaining claims, this rule exists to protect the *insurer* from fraud. *See id.* Intri-Plex is the insured, not the insurer, and it does not have subrogation rights to protect.

## II.  The district court properly dismissed Intri-Plex's complaint without leave to amend.

**[6]** "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005) (internal quotation marks and citation omitted); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

**[7]** Intri-Plex argues that it could amend its complaint to allege that Crest settled with AMI with knowledge of Intri-Plex's unsatisfied claims. But as discussed, Intri-Plex cannot benefit from the rule that a tortfeasor with knowledge of an insurer's subrogation claim may not settle the entire cause of action by settling only with the insured and thereby foreclose a subsequent action by the insurer. *See Allstate*, 77 Cal. App. 4th at 912; *see also Griffin v. Calistro*, 229 Cal. App. 3d 193, 196 (1991). Because this rule "involves an insured's and tortfeasor's *voluntary* settlement *and release of all claims with knowledge of an insurer's subrogation rights*," *Allstate*, 77 Cal. App. 4th at 912 (second emphasis added), it exists to protect the insurer, not the insured. The insurer succeeds to the rights of the insured, and the tortfeasor cannot prevent the insurer from exercising those rights. Here, Intri-Plex did not succeed to the rights of AMI, so Intri-Plex did not have any subrogation rights to protect.

## CONCLUSION

The district court's grant of defendant's motion to dismiss is

## AFFIRMED.