FILED

JUL 08 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )     BAP No.   AZ-15-1279-KuJaJu
                                    )
CRAIGHTON THOMAS BOATES,            )     Bk. No.   2:14-bk-17115-GBN
                                    )
              Debtor.               )     Adv. No.  2:15-ap-00269-GBN
_____)
                                    )
DALE D. ULRICH, Chapter 7           )
Trustee,                            )
                                    )
              Appellant,            )
                                    )
v.                                  )     **ORDER ON MOTION FOR REHEARING**
                                    )
SCHIAN WALKER, P.L.C.,              )
                                    )
              Appellee.             )
_____)

Before:  KURTZ, JAIME[1] and JURY, Bankruptcy Judges.

This panel has received and reviewed appellee Schian Walker's motion for rehearing filed pursuant to Rule 8022. In the motion, Schian Walker raises a single point it claims this Panel misapprehended. Contrary to this Panel's ruling, Schian Walker contends that, under the adversary proceeding retainer agreement it entered into with Boates, the $60,000 flat fee was supposed to constitute full advance payment not only for services to be rendered but also for all litigation costs to be incurred.

Schian Walker has admitted that its form statement of Billing Policies and Procedures is incorporated into every

_____

[1]Hon. Christopher D. Jaime, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

representation agreement it enters into, including the November 5, 2014 letter agreement it entered into with Boates. Indeed, the letter agreement (prepared by Schian Walker) contains a provision in which Boates is required to acknowledge that he has read both the letter agreement and the Billing Policies and Procedures statement and that he has agreed to both of them.

Along similar lines, the Billing Policies and Procedures statement contains the following introductory paragraph:

> It is the policy of Schian Walker, P.L.C. (the "Firm") to provide this statement of Billing Policies and Procedures (the "Policy") to each of its clients, together with a cover letter that defines the scope of the representation and reflects any **other** agreed terms that may be unique to a particular client or representation (the "Engagement Letter").

(Emphasis added.)

The Billing Policies and Procedures statement contains a paragraph specifying that Boates is liable "for all out-of-pocket costs incurred in connection with the matter." Meanwhile, the letter agreement never refers to costs at all. Instead, it focuses exclusively on the services Schian Walker was promising to provide in exchange for a flat fee of $60,000. For instance, the letter agreement stated that Schian Walker was willing to defend Boates in the anticipated nondischargeability litigation for a flat fee of $60,000 and that the flat fee would cover "the value of all work we will perform through the conclusion of the Adversary Proceeding." To reiterate, the letter agreement says absolutely nothing about costs.

In our June 9, 2016 Opinion, we construed the parties' contract as including an obligation by Boates to pay all litigation costs. This construction was based on the seemingly

2

unequivocal language on the face of the contract. This construction also was based on the argument included in Ulrich's appeal brief that the legal services contract between Boates and Schian Walker was an executory contract, in part, because of the costs provision. Schian Walker's responsive appeal brief cursorily addressed the costs aspect of Ulrich's executory contract argument, but Schian Walker never explained how the seemingly unequivocal language of the letter agreement could be interpreted to address litigation costs when the letter agreement never mentions them.

In its rehearing motion, Schian Walker in essence contends that, when it referred in its letter agreement to a flat fee for services to be rendered, it really meant a flat fee for services to be rendered and for all litigation costs to be incurred. To support this alternate construction of the parties' contract, Schian Walker relies for the first time upon extrinsic evidence, which it claims demonstrates the parties' true intent – that Boates' $60,000 advance payment would cover both fees and costs.

It is not necessary for us to resolve the question of contract interpretation raised by Schian Walker's rehearing motion. Even if we were to conclude that Boates did not owe Schian Walker any costs under the retainer agreement and even if we were to conclude, based thereon, that the retainer agreement was not an executory contract, this would not change the ruling we made in our June 9, 2016 Opinion.

Contract rights held by the debtor on the date of his or her petition filing are property of the bankruptcy estate regardless of whether the rights are associated with an executory or non-

3

executory contract. See Gordon v. Hines (In re Hines), 147 F.3d 1185, 1189 (9th Cir. 1998) (stating that a prepaid contractual right to future legal services that "exists at the outset of the bankruptcy case . . . becomes property of the debtor's estate").

In re Hines's statement regarding the scope of bankruptcy estate property, and the inclusion of contract rights within it, is by no means novel. As early as 1984, the Ninth Circuit held that prepetition contract rights are included within the Bankruptcy Code's definition of bankruptcy estate property. Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984); see also Sliney v. Battley (In re Schmitz), 270 F.3d 1254, 1258 (9th Cir. 2001) (listing additional Ninth Circuit cases); Johnson v. Taxel (In re Johnson), 178 B.R. 216, 218-19 (9th Cir. BAP 1995) (holding that proceeds of contracts rights arising from prepetition sales contract were estate property).

The Ninth Circuit's more recent decisions dealing with contract rights in bankruptcy are consistent with In re Hines, In re Ryerson and In re Johnson. See, e.g., Gladstone v. U.S. Bancorp, 811 F.3d 1133, 1136 (9th Cir. 2016) (holding that debtor's rights arising from prepetition life insurance policies were estate property); First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 563 (9th Cir. 2006) (opining that trustee's rejection of lease did not divest the bankruptcy estate of whatever lease rights debtor was entitled to under the lease and under applicable nonbankruptcy law as of the date of the petition filing).

In our June 9, 2016 Opinion, we did not address the status in bankruptcy of contract rights arising from non-executory

4

contracts because we did not consider it necessary to our resolution of the appeal. However, Schian Walker's rehearing motion has opened the door to our considering whether the result would be the same for both executory contracts and non-executory contracts. We hold that the result is the same based on the Ninth Circuit case law set forth above.

Accordingly, to the extent we might have erred in holding that the retainer agreement was executory, any such error was harmless error, and we must ignore harmless error. <u>Van Zandt v. Mbunda (In re Mbunda)</u>, 484 B.R. 344, 355 (9th Cir. BAP 2012), <u>aff'd</u>, 604 F. App'x 552 (9th Cir. 2015).

For the reasons set forth above, Schian Walker's motion for rehearing is hereby ORDERED DENIED.